UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA           CRIMINAL NO. 06-50165-02

versus                             JUDGE STAGG

DEMETRIUS DEBOSE                   MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

Before the court is Defendant's Motion to Suppress Evidence (Doc. 33). For the reasons that follow, it is recommended that Defendant's motion be denied.

**Introduction**

Defendant is charged in a multi-defendant, multi-count indictment (Doc. 9) with various drug offenses.[1] His motion to suppress pertains to a search warrant executed by the undersigned magistrate judge on October 19, 2006. The search warrant and application are attached to Defendant's motion as Exhibits A and B. Doc. 33-2. The motion argues that (a) the affidavit attached to the application for the warrant fails to set forth sufficient probable cause to believe that contraband or other evidence of criminal activity would be present at Defendant's residence at the time the search was conducted; and (b) the information in the affidavit was stale. Because Defendant's arguments can be resolved by looking at the four corners of the search warrant, application and the supporting affidavit, an evidentiary hearing has not been held on the motion.

---

[1] Co-Defendant Christopher Crawford entered a plea of guilty on January 25, 2007 (Doc. 39), and Co-Defendant Willie Shed is scheduled to enter a guilty plea on February 15, 2007 (Doc. 52).

**The Search Warrant Application**

The application for the search warrant was supported by a lengthy affidavit of Lee Scott, an experienced police officer who has worked for the DEA Task Force for the last six years. Scott's affidavit details how he and officers with other agencies investigated Defendant and others for the two weeks preceding presentation of the search warrant application. A brief summary of Scott's testimony (relative to Defendant and Defendant's residence) is set forth below.

On October 9, 2006 (just ten days before the search warrant was executed) a confidential informant ("CI") provided detailed information to Scott concerning the CI's personal observations of the drug distribution activities of Defendant and Christopher Crawford (a co-defendant herein). Affidavit of Scott, ¶ 15. The CI told Scott that, approximately three weeks prior, Crawford had contacted the CI and asked him to meet him (Crawford) in Bossier City. ¶¶ 22, 27. At that meeting, Crawford and Defendant were in a silver Dodge car bearing a Texas license plate. That vehicle had been seen parked at Crawford's residence in Minden, Louisiana. The same vehicle also had been stopped on September 27, 2006 by a Louisiana state trooper, and the sole driver and occupant of that vehicle was Defendant. The car rental agreement was in Defendant's name. ¶ 24.

Crawford instructed the CI to follow him and Defendant to Tyler, Texas. In Tyler, the CI saw Crawford and Defendant meet with another person and obtain a bag which Crawford placed under the seat of the CI's vehicle. ¶ 31. The CI described the bag as having

a strong odor of cocaine. The CI was then instructed to follow Crawford and Defendant back to Minden.

On the return trip to Minden, Crawford and Defendant stopped at Defendant's residence, 2615 Tulip Street, Bossier City, Louisiana, which is the target of the search warrant. The CI witnessed Defendant walk into his residence, retrieve a book bag, then continue with Crawford on the trip to Minden. ¶ 32.

The CI then followed Crawford and Defendant to Minden High School, where Crawford retrieved the bag (from the CI's vehicle) containing "what the [CI] advised as two bricks of cocaine." ¶ 33. Crawford put the bag in his car and told the CI that the CI did not have to pay him the $300 he owed Crawford for past drug transactions and outstanding loans. ¶ 33.

The affidavit goes on the explain additional meetings and conversations between Crawford and the CI, but there is no indication in the affidavit that Defendant was present or participated in them.

**Probable Cause**

Probable cause is determined by examining the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230-231 (1983). It is a fluid concept – turning on the assessment of probabilities in a particular factual context – not readily, or even usefully, reduced to a neat set of legal rules. Id. It is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. Id. at 235. See also Kohler v. Englade,

470 F. 3d 1104, 1109 (5th Cir. 2006). A magistrate judge can use common sense when determining whether probable cause exists for the issuance of a search warrant. U. S. v. Streetman, 2006 WL 3419717 (5th Cir. 2006).

Information given to a magistrate judge in an application for a search warrant must be timely, and probable cause must be found to exist at the time the warrant issues. United States v. McKeever, 5 F.3d 863, 866 (5th Cir. 1993). The proof must be of facts closely related in time to the issuance of the warrant in order to justify finding probable cause at that time. Id. However, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance. Thus, courts demand less current information if the affidavit shows a longstanding, ongoing pattern of criminal activity and the evidence sought is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched. Streetman, supra.

**Analysis**

The warrant for the search of Defendant's residence was supported by probable cause. The affidavit provided great detail regarding Defendant's suspected drug trafficking activities with Crawford. The reliability of the CI's information is supported by the specificity of the information provided, the independent surveillance of the agents, and their corroboration of certain aspects of the CI's information. See, e.g., ¶¶ 36, 42, 46, 49, 51 and 54. Furthermore, the totality of the circumstances show that there is a sufficient connection between Defendant and Crawford's drug trafficking activities, including: (1) the 2006 Dodge

car rented by Defendant was parked at Crawford's residence; (2) Defendant and Crawford drove in Defendant's car to Tyler, Texas to pick up cocaine; (3) on the return trip from Tyler, Crawford and Defendant stopped at Defendant's home at which time Defendant entered his residence, retrieved a book bag, and then Defendant and Crawford continued their trip to Minden.

The affidavit also establishes that drug traffickers often take extraordinary efforts to conceal their drug trafficking activities and avoid detection by government agents, but they also maintain books, records, receipts and other documentation in secure locations within their residences. The evidence of drug trafficking and drug related documentation sought in the search warrant (see Attachment B to the warrant) is precisely the type of documentation that a drug trafficker would be expected to retain for some period of time.

The trip to Tyler where Crawford and Defendant purchased or obtained the two bricks of cocaine, following which Defendant was seen entering his residence and retrieving a book bag, occurred in mid to late September 2006. The warrant was issued on October 19, 2006. Given the evidence set forth in the affidavit, which establishes an ongoing drug trafficking operation involving Crawford and Defendant, and given the nature of the evidence sought in the warrant, it was likely that such evidence would still be present in Defendant's home. Therefore, the information in support of the warrant was not stale.

**Conclusion**

The search warrant for Defendant's residence was supported by probable cause. The information in the affidavit was not stale, and it was reasonably likely that the documentation and other evidence sought in the warrant would still be located in Defendant's residence despite the passage of approximately thirty days. Therefore, there is no basis to invalidate the search warrant in this case.

Accordingly;

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress (Doc. 33)** be **denied.**

**Objections** – **DUE NO LATER THAN FEBRUARY 26, 2007**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have until **February 26, 2007** to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Cr. P. 59(b)(2). A party may respond to another party's objections within **three (3) days** thereafter. **Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing**.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court.  See  Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 15th day of February, 2007.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE